**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RHONDA LYLE | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  25-2647 |
| | : | |
| TRANS UNION | : | |

<u>**MEMORANDUM**</u>

**MURPHY, J.**                                                    **January 8, 2026**

      This case involves something familiar but sometimes frustrating: credit reporting.
TransUnion, a credit reporting agency, allegedly published incorrect information in its credit
report on Rhonda Lyle, the plaintiff.  Ms. Lyle sued TransUnion for this alleged misreporting,
and the parties reached a settlement agreement resolving Ms. Lyle's claims against TransUnion.
But Ms. Lyle has been unhappy with the settlement agreement and surrounding circumstances.
She filed a new complaint against TransUnion asserting that the settlement agreement was
invalid and unenforceable.  TransUnion now moves to dismiss all claims against it, while Ms.
Lyle moves to vacate the dismissal of the prior case against TransUnion pursuant to the
settlement agreement and asks to consolidate her two cases.  For the following reasons, we grant
TransUnion's motion to dismiss and deny Ms. Lyle's motions for *vacatur* and consolidation.

## I.  FACTUAL BACKGROUND

      To understand the motions before us, we must first revisit the history of this case.  On
April 30, 2024, Rhonda Lyle filed a complaint against TransUnion in this court.  No. 24-cv-
1831, ECF 1.  In it, she claimed that TransUnion violated the Fair Credit Reporting Act (FCRA)
when it failed to: (1) follow reasonable procedures to assure maximum possible accuracy, in
violation of 15 U.S.C. § 1681e(b); (2) perform reasonable reinvestigation, in violation of 15
U.S.C. § 1681i; and (3) provide her with her TransUnion credit file, in violation of 15 U.S.C.

§ 1681g.  *Id.* at ¶¶ 193-216.  Specifically, Ms. Lyle alleged that, between 2022 and August 2023, TransUnion mixed her credit file with that of a deceased consumer and published credit reports to her creditors, which falsely stated that she was deceased and therefore lacked a credit score.  *Id.* at ¶¶ 3-6, 115-185.  She averred that, due to TransUnion's erroneous reporting, she was denied a credit card application by Wells Fargo and multiple applications related to a home mortgage by Rocket Mortgage.  *Id.* at ¶¶ 122-23, 133, 151.  Ultimately, Ms. Lyle and TransUnion reached a confidential settlement agreement (Settlement Agreement) on January 7, 2025, and we closed this case pursuant to the parties' joint filing of a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  No. 24-cv-1831, ECF 22.

Soon after, Ms. Lyle sent us an email, in which she represented that she did not (1) understand her case to be dismissed, (2) recall signing the Settlement Agreement, or (3) believe the agreement was fair.  No. 24-cv-1831, ECF 29 at 1.  We held a video conference on March 26, 2025, to discuss her concerns.  No. 24-cv-1831, ECF 28.  Following this conference, we determined that the case should remain closed pursuant to the Settlement Agreement because the record before us reflected that Ms. Lyle chose to settle this matter.  No. 24-cv-1831, ECF 29 at 1.  Her lawyer, Hans Lodge, then moved to withdraw as Ms. Lyle's attorney on April 1, 2025, citing an irretrievable breakdown in their attorney-client relationship as evidenced by Ms. Lyle's "refusal to appropriately communicate or otherwise cooperate with her counsel and disregard of her counsel's advice."  No. 24-cv-1831, ECF 30-1 at 1-2.  That day, we granted Mr. Lodge's motion to withdraw as counsel.  No. 24-cv-1831, ECF 31.

Following the confidential Settlement Agreement, Ms. Lyle filed a new complaint against TransUnion on May 22, 2025, creating this second case.  DI 1.  TransUnion filed a motion to

dismiss (DI 9), to which Ms. Lyle responded in opposition (DI 11).  Ms. Lyle then filed several documents, including (1) a motion for production of documents (DI 19); and (2) an amended opposition to TransUnion's motion to dismiss with a request to file such opposition (DI 20, DI 21).  TransUnion filed an initial reply in support of its motion to dismiss.  DI 23.  We denied Ms. Lyle's motion for production of documents (DI 19) but granted her request for leave to amend her opposition and file a supplemental opposition (DI 20, 21), as well as her request to correct a typographical error (DI 24).  DI 25.  In this order, we provided TransUnion additional time to file a reply brief, responsive to Ms. Lyle's latest filings.  *Id.*  Ms. Lyle then filed a motion to set aside the Settlement Agreement and vacate dismissal (DI 26), which we denied — explaining that any relief that she sought from final judgment under Federal Rule of Civil Procedure 60(b) pertaining to No. 24-cv-1831 must be filed on the docket of the first case.  DI 27 at ¶ 1.  We also ordered the Clerk of Court to strike Exhibit A to Ms. Lyle's motion because that exhibit appeared to be portions of the purportedly confidential Settlement Agreement between the parties in No. 24-cv-1831.  *Id.* at ¶ 2.

Next, Ms. Lyle filed an amended complaint (DI 28) and amended opposition to TransUnion's motion to dismiss (DI 29), so we provided TransUnion time to either file briefing supplementing its motion to dismiss that addressed Ms. Lyle's amended complaint, or an answer and withdrawal of its motion to dismiss.  DI 30.  TransUnion then filed a letter, in which it argued that because Ms. Lyle did not name TransUnion as a defendant in her amended complaint, she abandoned her claims against it.  DI 31 at 1-2.  That day, we ordered Ms. Lyle to file a letter confirming whether she intended to dismiss TransUnion as a defendant and, if not, to respond to TransUnion's letter.  DI 32.  After additional filings from Ms. Lyle, we eventually

gave her until October 8, 2025, to file anything further — either through a response to

TransUnion's motion to dismiss or a proposed amended complaint. DI 35. Ms. Lyle then filed

three more amended complaints (DI 36, 40, 41) — the last of which is the operative complaint

(DI 41) — a motion to consolidate Nos. 24-cv-1831 and 25-cv-2647 (DI 38), and a motion to

vacate the dismissal of her case at No. 24-cv-1831 (DI 39). She also filed a motion to correct a

clerical error on the docket (DI 44), which we denied as moot (DI 46). TransUnion responded in

support of its motion to dismiss and in response to the entirety of the record. DI 47. Ms. Lyle's

subsequent reply (DI 48) completes the list of filings now before us.

## II.    OPERATIVE AMENDED COMPLAINT

Given the numerous filings in this case, we will start by setting out Ms. Lyle's assertions

in the operative complaint (DI 41). Ms. Lyle asserts the following causes of action: (1) an FCRA

violation by TransUnion due to its: (a) incorrect identification of Ms. Lyle as deceased; (b)

failure to properly reinvestigate its information on Ms. Lyle; and (c) failure to report accurate

information; (2) fraud and misrepresentations by TransUnion and Ms. Lyle's former counsel on

both Ms. Lyle and this court; and (3) a Fair Debt Collection Practices Act (FDCPA) violation

resulting from TransUnion's collusion with Ms. Lyle's former counsel. *Id.* at 3-4. Ms. Lyle

further argues that the Settlement Agreement is unenforceable because it was obtained without

her consent and through collusion, misrepresentation, and duress, and that TransUnion's *res

judicata* and breach of contract defenses are invalid due to this fraud and lack of consent. *Id.* at

3. Regardless, she maintains that the reopening of No. 24-cv-1831 on April 1, 2025, "nullif[ied]

[the] prior termination" of her claims against TransUnion. *Id.* Ms. Lyle contends that, in 2017,

TransUnion began erroneously reporting her as deceased, which caused her to lose her job and

suffer financial and personal damage due to the ensuing public humiliation and denials of her mortgage, loan, and credit card applications. *Id.* at 2. She alleges that she faces "ongoing harm and procedural injustices" due to TransUnion's misconduct, that "[r]egulatory findings document multiple wrongful TransUnion practices, including deceptive marketing, failure to correct inaccuracies, and employing dark patterns to trap consumers[,]" and that new evidence exists "of attorney/TransUnion collusion, with confidential information shared inappropriately." *Id.* at 2, 4. Ms. Lyle asks us to vacate the January 24, 2025 dismissal of her prior case with prejudice, reinstate her claims, and allow her to proceed *pro se* or with new counsel. *Id.* at 5. And, as we describe below, she also asks us to consolidate this case with No. 24-cv-1831 "for economy and efficiency, avoiding duplicative motions, discovery, and inconvenience to the parties." *Id.* at 5-6.[1]

## III.    MOTIONS AT ISSUE

### A.    TransUnion's motion to dismiss

TransUnion moves to dismiss Ms. Lyle's claims against it, asserting her claims are barred by *res judicata* because they "involve the same parties, the same issues, the same conduct, and the same damages alleged in the original lawsuit." DI 9 at 8. It insists *res judicata* applies because there is (1) a final judgment on the merits — here, a stipulation of dismissal with prejudice in No. 24-cv-1831; (2) that final judgment involved the same parties — here,

---

[1] Ms. Lyle states certain allegations against her former counsel, but she has not named them as defendants. Also, Ms. Lyle lists defense counsel as a defendant, but it does not appear that the body of the complaint states claims against him individually. It appears to us that the case is against TransUnion, and TransUnion filed the motion to dismiss. Thus, that is where our focus will be.

TransUnion and Ms. Lyle; and (3) the instant lawsuit is based upon the same cause of action —

here, FCRA violations.  *Id.* at 11-17.  TransUnion argues that Ms. Lyle's belief that her prior

counsel made misrepresentations cannot provide a legal basis for bringing a second lawsuit,

against the same party, on the same cause of action.  *Id.* at 14-15.  Moreover, it observes that Ms.

Lyle provides no facts supporting her claims that TransUnion and her former counsel committed

misconduct in reaching the Settlement Agreement, that TransUnion's counsel tampered with her

ECF account in any manner, or that there are new regulatory actions against TransUnion.  DI 47

at 4-8.  Nor, TransUnion maintains, should we credit Ms. Lyle's argument that fraud and lack of

consent invalidate its assertions of *res judicata* and breach of contract.[2]  *Id.* at 8.  As for her

FDCPA claim, TransUnion contends that Ms. Lyle provides no allegations that a "debt" exists,

that TransUnion is a debt collector, or that TransUnion's practice involved an attempt to collect a

debt.  *Id.* at 9.  TransUnion reasons that, because her original complaint in No. 24-cv-1831

sought actual, statutory, and punitive damages under the FCRA, her claim that she was

undercompensated based on her counsel's conduct in that prior action cannot shield the instant

case from *res judicata*.  DI 9 at 16.  In TransUnion's view, the only difference between Ms.

Lyle's original complaint (in No. 24-cv-1831) and her second complaint (the instant complaint)

is that the instant complaint raises patently time-barred FCRA claims — claims regarding

allegations that occurred between 2017 and 2021.  *Id.* at 15.  TransUnion explains that the FCRA

carries a two-year statute of limitations such that, because Ms. Lyle filed the instant complaint on

---

[2] The breach of contract issue seemingly arises from Ms. Lyle's filing of the confidential
Settlement Agreement between her and TransUnion on the No. 24-cv-1831 docket, which we
struck.  DI 27 at ¶ 2.  As TransUnion explains, TransUnion does not allege a breach of contract
defense in its motion to dismiss.  DI 47 at 8.

May 22, 2025, all claims arising before May 22, 2023, are time-barred.  *Id.* at 16.  And because Ms. Lyle's complaint demonstrates facial "noncompliance with the statute of limitations period[,]" TransUnion avers it can properly assert this statute of limitations defense at the motion to dismiss stage.  *Id.* at 15.

Ms. Lyle urges us to deny TransUnion's motion to dismiss.  DI 48.  She argues that *res judicata* does not apply because (1) there was no final judgment on the merits; (2) FCRA and FDCPA claims have distinct factual bases, timelines, and statutory protections; and (3) her FDCPA claims "arise from new conduct, ongoing violations, and discrete harms" following the prior case.  DI 48 at 2; DI 41 at 5.  Ms. Lyle also believes dismissal would be inappropriate because we expressly allowed her to file a new complaint.  DI 48 at 2.  She insists that she has alleged sufficient facts to show that she faces an ongoing injury, rather than "a repeat of settled issues[,]" highlighting that she is currently homeless and still not financially whole.  *Id.* at 2-3.  Ms. Lyle reiterates that she neither knew nor voluntarily agreed to the prior Settlement Agreement or dismissal with prejudice, explaining that her former counsel insisted that a two-year statute of limitations applied and that she had to accept a lower settlement or risk no recovery.  *Id.* at 3.  She contends that such pressure forced her to accept the unsatisfactory Settlement Agreement, while she also claims that her former counsel signed the dismissal paperwork without her consent and left her "uninformed and struggling to understand filings and settlements" throughout her case.  *Id.* at 4.

**B.    Ms. Lyle's motion to consolidate Nos. 24-cv-1831 and 25-cv-2647**

Ms. Lyle seeks consolidation of No. 24-cv-1831 and No. 25-cv-2647 pursuant to Federal Rule of Civil Procedure 42(a).  DI 38 at 1.  She states that these matters "involve common

questions of law and fact related to [her] claims against [TransUnion] and [TransUnion's] counsel] concerning inaccuracies in credit reporting, mishandling of disputes, related financial and personal damages, and alleged misconduct by Defendants." *Id.*  Ms. Lyle asserts that "[t]he factual background of both cases overlaps substantially, including [her] experience beginning in 2017 of being erroneously reported as deceased, credit denials, disputes filed, prior counsel's conduct, and Defendant's actions." *Id.*  She believes consolidation would advance judicial efficiency and economy "by avoiding duplication of discovery, testimony, and motions, and by minimizing inconvenience and expense for the parties and the Court."  DI 38-1 at 1.  And she insists that consolidation would not prejudice either party because "the matters arise from the same series of events and claims." *Id.*

TransUnion resists consolidation, arguing that we should deny Ms. Lyle's request because (1) the original case is closed and we have not reopened it; and (2) consolidation would be futile because her claims are either meritless or barred by *res judicata*.  DI 47 at 9.  Nor, TransUnion advises, should we permit Ms. Lyle to circumvent our order denying her request to reopen the original matter (No. 24-cv-1831, ECF 29) by means of a consolidation argument. *Id.*

## C.    Ms. Lyle's motion to vacate dismissal of No. 24-cv-1831

For similar reasons, Ms. Lyle asks us to vacate the order of dismissal in No. 24-cv-1831 pursuant to Rule 60(b).  DI 39 at 1.  She asserts that her action in No. 24-cv-1831 "was dismissed with prejudice, accompanied by a monetary award that was manifestly insufficient and not reflective of the extent of the damages suffered since 2017[,]" that she "was not properly informed or consulted prior to critical filings by counsel, including the stipulated protective order, joint notice of settlement, and ultimate dismissal[,]" and that "[s]erious procedural

8

irregularities, new regulatory findings, and evidence of counsel mismanagement" — including counsel's "failure to communicate material developments, loss of critical evidence, and submission of settlements contrary to [her] interests" —  justify Rule 60(b) vacatur.  *Id.* at 1-3. In her view, she meets the Rule 60(b) standard for relief because there are (1) extraordinary circumstances, given No. 24-cv-1831 was dismissed by her counsel without her informed consent and premised on misinformation regarding statutory limits and damages; (2) examples of newly discovered evidence, given the recent regulatory penalties and class action settlements involving TransUnion which ultimately support her claims; (3) prejudice and severe harm, as she has lost creditworthiness, financial stability, and employment due to TransUnion's misconduct, harm of which her counsel aggravated through their actions and inactions; (4) procedural defects, because the stipulated protective order and joint settlement notice were filed without her knowledge or consent and dismissal was entered without addressing all the substantive merits of her case; and (5) interests of justice implicated, as vacatur is necessary to ensure her right to fully pursue her valid claims and obtain just compensation for them.  *Id.* at 4-5.

TransUnion opposes Ms. Lyle's motion for *vacatur*, again insisting that her allegations of misconduct related to the Settlement Agreement and of new regulatory actions against TransUnion are baseless and unsupported by her pleadings.  DI 47 at 5-7.

## IV.    LEGAL STANDARDS

### A.    Rule 12(b)(6) challenges

A party may move to dismiss an action against it by asserting the complaint failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When reviewing a Rule 12(b)(6) motion, we must only consider "the complaint, exhibits attached to the complaint,

matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (citation modified). We also shall "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Id.* (citation modified). Conclusory allegations do not receive the same presumption of truth. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). But "even outlandish allegations" receive the presumption of truth so long as they do not resemble a "formulaic recitation of the elements of a [claim] or other legal conclusion." *Id.* (citation modified); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Though "the clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point[,]" some allegations that do not state ultimate legal conclusions may be "nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual[.]" *Connelly*, 809 F.3d at 790 (citation modified).

A plaintiff's complaint must also state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679. Whether the complaint achieves this plausibility standard is a context-specific inquiry, during which we must utilize our common sense and judicial experience. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not show[n] — that the pleader is entitled to relief." *Id.* (citation modified).

Additionally, we must liberally construe complaints filed by *pro se* litigants. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir.

2009) (citation modified).  However, the *pro se* litigant still must plead sufficient facts

supporting her claims to survive dismissal.  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245

(3d Cir. 2013) (citation modified).  Indeed, here we have endeavored to give Ms. Lyle every

opportunity to fully state her claims and arguments in response to TransUnion.

**B.    Motions to consolidate**

A court may consolidate civil actions if the actions "involve a common question of law or

fact."  Fed. R. Civ. Pro. 42(a)(2).  The party seeking consolidation must prove consolidation is

warranted.  *Borough of Olyphant v. PPL Corp.*, 153 F. App'x 80, 82 (3d Cir. 2005) (citation

modified).  We have broad discretion in determining whether to consolidate actions.  *Id.* (citation

modified).  In making this determination, we might consider whether consolidation would cause

inconvenience, inefficiency, or undue prejudice to a party.  *Robinson v. New Jersey Mercer Cnty.

Vicinage-Fam. Div.*, 562 F. App'x 145, 148 (3d Cir. 2014) (citation modified).

**C.    *Res Judicata***

The principle of *res judicata* "is founded upon the generally recognized public policy that

there must be some end to litigation and that when one appears in court to present his case, is

fully heard, and the contested issue is decided against him, he may not later renew the litigation

in another court."  *Heiser v. Woodruff*, 327 U.S. 726, 733 (1946) (citation modified).  "[A]

judgment duly rendered in one court will be recognized as *res judicata* in a suit between the

same parties in a federal court."  *Id.* (citation omitted).  *Res judicata* serves "to relieve the parties

of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent

decisions, and encourage reliance on adjudications."  *Turner v. Crawford Square Apts. III, L.P.*,

449 F.3d 542, 551 (3d Cir. 2006) (citation modified).  Under this doctrine, "[a] final judgment on

11

the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981) (citation modified).  To prevail on a *res judicata* defense, the defendant must show there was "(1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same cause of action." *Elkadrawy v. Vanguard Group, Inc.*, 584 F.3d 169, 172 (3d Cir. 2009) (citation modified).  Any dismissal under Fed. R. Civ. Pro. 41(b), except for a dismissal "for lack of jurisdiction, improper venue, or failure to join a party under Rule 19" constitutes an adjudication on the merits.  Fed. R. Civ. Pro. 41(b); *Elkadrawy*, 584 F.3d at 173.

If a settlement agreement triggers the dismissal of a matter, and a defendant's resulting discharge, then "[a] somewhat modified form of *res judicata* applies." *Toscano v. Conn. Gen. Life Ins. Co.*, 288 Fed. Appx. 36, 38 (3d Cir. 2008) (per curiam) (citation modified).  "The express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement." *Id.* (citation modified).  For claim preclusion (*i.e.*, *res judicata*) purposes, judicially approved settlement agreements constitute final judgments on the merits.  *Id.* (citation modified).  But conduct that occurs after the execution of the settlement agreement that gives rise to a new claim is not barred by *res judicata*.  *See Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 328 (1955) ("While the [] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."); *Labelle Processing Co. v. Swarrow*, 72 F.3d 308, 314 (3d Cir. 1995) ("[N]ew facts (*i.e.* events occurring after the events giving rise to the earlier claim) may give rise to a new claim, which is

12

not precluded by the earlier judgment.") (citation modified).

**D.    FCRA claims**

The Fair Credit Reporting Act aims "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union*, LLC, 617 F.3d 688, 706 (3d Cir. 2010) (citation modified). Sections 1681n and 1681o permit an individual to bring a private suit for damages against a credit reporting agency (CRA) who willfully or negligently fails to comply with specific duties it owes to consumers under the FCRA. 15 U.S.C. §§ 1681n, 1681o; *Seamans v. Temple Univ.*, 744 F.3d 853, 859-60 (3d Cir. 2014). Section 1681e(b) of the FCRA requires a CRA, in preparing a consumer report, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b); *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342 (3d Cir. 2022). To establish a *prima facie* § 1681e(b) claim, the plaintiff must demonstrate that the "CRA prepared a report containing inaccurate information[.]" *Bibbs*, 43 F.4th at 342-43 (citation modified). Information that "is technically correct" may still be inaccurate if, by omission, it generates "a materially misleading impression." *Id.* at 343 (citation modified).

A CRA may be liable for negligent noncompliance with the Fair Credit Reporting Act (FCRA) if "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Bibbs*, 43 F.4th at 342 (citation modified). In contrast, a

CRA willfully violates the FCRA if the CRA knowingly violates the FCRA or acts with reckless disregard of its FCRA obligations toward the consumer. *Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012) (citation modified). The CRA acts with reckless disregard if its action (1) constitutes a violation of the FCRA under a reasonable reading of the statute; and (2) demonstrates that the CRA "ran a risk of violating the law [that was] substantially greater than the risk associated with a reading that was merely careless." *Id.* at 248-49 (citation modified). To be reckless, the CRA's conduct must be objectively unreasonable given the clearly established legal rules at the time of its action. *Id.* at 249 (citation modified).

### E.    Common law fraud and misrepresentation claims

Consumers in Pennsylvania also may bring common law fraud and misrepresentation claims against CRAs. To sustain a common law fraud or intentional misrepresentation claim, the consumer must prove (1) there was a representation made; (2) that representation was material to the transaction at issue; (3) the representation was made falsely, with either the knowledge of its falsity or recklessness with respect to its truth or falsity; (4) the representation was made with the intent to mislead another into relying upon it; (5) there was justifiable reliance upon that misrepresentation; and (6) that reliance proximately caused the resulting injury. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 205 (3d Cir. 2022) (citation modified); *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). In slight contrast, to prevail on a negligent misrepresentation claim, the consumer must prove (1) there was a misrepresentation of material fact; (2) the representor (a) knew of the misrepresentation, (b) made the misrepresentation without knowledge of its veracity; or (c) made the representation under circumstances in which it should have known of its falsity; (3) the representor intended the representation to induce another to act upon it; and (4)

a party justifiably relied upon the misrepresentation, resulting in injury. *Gibbs*, 647 A.2d at 890 (citation modified). Thus, the difference between intentional and negligent misrepresentation in Pennsylvania is as follows: to commit intentional misrepresentation, the representor must have known its words were false or acted recklessly with respect to the words' veracity, whereas to commit negligent misrepresentation, the representor must have failed to reasonably investigate the truth of its words, but it need not have known its words were false nor acted recklessly with respect to the words' veracity. *See Gibbs*, 647 A.2d at 890 (citation modified).

## F.    Contract law claims

State contract law governs the validity and enforceability of settlement agreements. *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 Fed. Appx. 194, 200 (3d Cir. 2012) (citing *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009); *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999)). Under Pennsylvania law, we assess the enforceability of a settlement agreement by determining whether both parties manifested an intent to be bound by the agreement's terms, and whether the terms were sufficiently definite such that they may be specifically enforced. *Channel Home Centers, Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 298-299 (3d Cir. 1986) (citation modified). The intent inquiry is an objective one: we ask what a reasonable person would discern the parties' intent to be, after evaluating the parties' behavior. *Am. Eagle Outfitters*, 584 F.3d at 582 (citation modified). Though "[t]he presence . . . of a signed writing is relevant to [the intent] determination," the core question is "whether the parties agreed to the essential terms of a contract." *Shell's Disposal*, 504 Fed. Appx. at 201 (citation modified). As for the definiteness of the agreement, we look to whether the agreement's essential terms are poorly defined or ambiguous, such that "it is impossible to

understand what the parties agreed to." *Id.* at 202 (citation modified).

## G.    FDCPA claims

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692(e) *et seq.*, constitutes another source of legal recourse for consumers.  This law seeks "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  To successfully bring an FDCPA claim, a plaintiff must demonstrate four elements: "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) (citation modified).

## V.    DISCUSSION

## A.    Ms. Lyle's FCRA claims against TransUnion must be dismissed because they are either barred by *res judicata* or insufficiently pled under Rule 12(b)(6)

To the extent that Ms. Lyle brings FCRA claims against TransUnion for its alleged conduct both preceding and postdating the execution of the Settlement Agreement, such claims must be dismissed.  First, *res judicata* clearly bars Ms. Lyle's FCRA claim against TransUnion for its alleged actions prior to the Settlement Agreement's execution.  As a threshold matter, we find this Settlement Agreement is enforceable because (1) the parties manifested an intent to be bound by its terms, as exhibited by the parties' signatures and conduct, which we examined at the March 26, 2025 video conference; (2) the essential terms of the agreement were sufficiently specific (*i.e.*, the amount and manner of compensation agreed to, the parties bound by the

16

agreement, the scope of the agreement, and the conditions constituting a breach); and (3) on the record before us, and as explained further below, we cannot conclude that this agreement was reached through fraudulent, coercive, or misleading means. *Grossman*, 795 F.2d at 298-99.

Having decided that the Settlement Agreement is enforceable, we now turn to the terms of that agreement to determine the scope of *res judicata*. *Toscano*, 288 Fed. Appx. at 38. Those terms clearly bar Ms. Lyle's FCRA claim against TransUnion for alleged conduct that predated the agreement's execution. Without delving into the specifics of the confidential agreement, the Settlement Agreement broadly covers anything related to the No. 24-cv-1831 matter — including anything that could have been asserted in that matter but was not so asserted, or which in any way related to Ms. Lyle's credit history information reported by TransUnion or TransUnion's furnishing of such information to any third parties, prior to the agreement's execution. In the instant complaint, Ms. Lyle's FCRA claim against TransUnion relies upon TransUnion's alleged (1) incorrect identification of Ms. Lyle as deceased; (2) failure to properly reinvestigate; and (3) failure to report accurate information. DI 41 at 3. Because this conduct served as the very basis for her prior, enforceable agreement with TransUnion and occurred prior to the execution of that agreement, *res judicata* bars this FCRA claim.

As for Ms. Lyle's argument that we should consider TransUnion's alleged misconduct dating back to 2017, because such evidence was not included in the Settlement Agreement, we find this conduct barred by the FCRA's statute of limitations. A plaintiff must bring an FCRA claim within the shorter of (1) two years following the date of her discovery of the FCRA violation; or (2) five years following the date on which the FCRA violation occurred. 15 U.S.C. § 1681p. Ms. Lyle's filings suggest that she only recently discovered the alleged misconduct

dating back to 2017, such that the earlier of the two time periods — and thus, the one applicable here — would be five years from the date on which the FCRA violation occurred (*i.e.*, 2022). Because Ms. Lyle filed this action on May 22, 2025, and because she has not specified whether and what she disputed with respect to the alleged conduct between 2017 and 2020,[3] we conclude that she is — at least as it appears on this record — past the statutory deadline to seek relief for any alleged FCRA violations occurring prior to May 22, 2020.  Accordingly, any FCRA claims against TransUnion predicated on its alleged misconduct prior to May 22, 2020, are dismissed with prejudice.

We turn next to Ms. Lyle's FCRA claims against TransUnion for alleged misconduct after the execution of the Settlement Agreement.  Though *res judicata* may not bar such claims, Rule 12(b)(6) nonetheless requires their dismissal.  *See Lawlor*, 349 U.S. at 328 (holding *res judicata* did not preclude claims that did not exist and could not have been brought in the prior case); *Labelle*, 72 F.3d at 314 (same).  To survive the pleadings stage, Ms. Lyle must plead sufficient facts to establish that TransUnion either negligently or willfully failed to "follow reasonable procedures to assure maximum possible accuracy of the information concerning" Ms. Lyle, "prepared a report [on Ms. Lyle] containing inaccurate information[,]" and, due to this inaccurate information, harmed Ms. Lyle.  15 U.S.C. § 1681e(b); *Bibbs*, 43 F.4th at 342-43

---

[3] Federal district courts are split regarding whether each of a consumer's separate notices of dispute trigger a CRA's duty to investigate under the FCRA's statute of limitations (and whether the CRA's failure to investigate thus may constitute an FCRA violation), even if the consumer previously disputed the same information.  *Escobar v. Pennsylvania Higher Educ. Assistance Agency Servs., LLC*, 2018 WL 1740364, at *5 (E.D. Pa. Apr. 11, 2018) (citation modified).  And the Third Circuit has not interpreted this question.  *Id.* at *4.  But we need not decide whether timely disputes regarding 2017-2020 misconduct revive claims involving that misconduct, given the lack of information in this record about any such notices of dispute.

(citation modified).  She can establish TransUnion was negligent in its FCRA duties to her by demonstrating that the inaccurate information about her was due to TransUnion's failure to follow reasonable procedures to ensure the maximum possible accuracy of its reported information.  *Bibbs*, 43 F.4th at 342; *Fuges*, 707 F.3d at 248.  Or she can establish TransUnion acted willfully by pleading sufficient facts to show that TransUnion knowingly violated the FCRA or acted with reckless disregard of its FCRA obligations toward her.  *Bibbs*, 43 F.4th at 342 n.16; *Fuges*, 707 F.3d at 248.

Here, Ms. Lyle avers that "ongoing harm and procedural injustices continue to affect [her] rights and well-being" and that she suffers from "ongoing violations, and discrete harms post-prior proceedings."[4]  DI 41 at 2.  In her other filings, which we will consider out of caution given the numerous complaints and motions in this case, she asserts that she is "still not identified by TransUnion" even after the Settlement Agreement, citing "Exhibit A" as evidence. DI 36 at 2; DI 40 at 2.  Notably, Exhibit A is a letter to Ms. Lyle from Synchrony Bank, dated September 9, 2024 — before the Settlement Agreement was executed.  DI 36 at 5, Exhibit A; DI 40 at 5, Exhibit A.  Thus, in support of her post-settlement-execution FCRA claims, Ms. Lyle states only bald assertions of ongoing violations and harms, and another vague assertion that TransUnion has still not identified her to this day — which is purportedly supported by an Exhibit that predates the settlement's execution.  She has not pled any specific information regarding how TransUnion allegedly violated, and continues to violate, the FCRA after the

---

[4] Though Ms. Lyle couches these "ongoing violations, and discrete harms post-prior proceedings" under her FDCPA claims "legal arguments" section, pursuant to our duty to liberally construe Ms. Lyle's pleadings, we also will assess these assertions as they relate to her FCRA claim.  DI 41 at 5.

settlement's execution. Therefore, and though we would not minimize what we understand to be Ms. Lyle's difficult situation, we must conclude that she has not furnished sufficient facts to establish that TransUnion negligently or willfully violated the FCRA after the execution of the Settlement Agreement. This FCRA claim is thus dismissed without prejudice.

**B.    Ms. Lyle's FDCPA and common law fraud and misrepresentation claims must be dismissed for failure to state a claim under Rule 12(b)(6)**

Even construing Ms. Lyle's allegations of fraud and misrepresentation against TransUnion as occurring after the Settlement Agreement's execution, we conclude that Ms. Lyle's pleadings do not survival dismissal on her remaining claims. We begin by examining the allegations in Ms. Lyle's third amended complaint, which she acknowledges "incorporates and supersedes all previous complaints." DI 41 at 1. Regarding TransUnion's post-settlement-execution conduct, or conduct that arguably occurred post-settlement-execution, Ms. Lyle alleges the following: (1) she faces "ongoing harm and procedural injustices [which] continue to affect [her] rights and well-being"; (2) there exist "[r]egulatory findings" which "document multiple wrongful TransUnion practices, including deceptive marketing, failure to correct inaccuracies, and [the] employing [of] dark patterns to trap consumers"; and (3) TransUnion engaged in fraud alongside and colluded with Ms. Lyle's former counsel to obtain the settlement without Ms. Lyle's consent, which included "the manipulation of discovery and intentional misrepresentation[,]" "abusive and deceptive collection conduct[,]" subjecting of Ms. Lyle to duress, and inappropriate sharing of confidential information. DI 41 at 2-4. And looking beyond Ms. Lyle's final amended complaint to her other filings, she alleges the following arguably post-settlement-execution conduct by TransUnion: (1) submission of the settlement agreement to the Court which purportedly contained, but did not actually contain, Ms. Lyle's signature; (2) filing

of a stipulation of dismissal with prejudice, without Ms. Lyle's knowledge or consent; (3) failure

to disclose that No. 24-cv-1831 was reopened on April 1, 2025, constituting a misrepresentation

to this court; (4) false statements regarding Ms. Lyle's employment termination; (5) collusion

with Ms. Lyle's former attorneys "to coerce Plaintiff into a fraudulent settlement agreement

regarding a consumer debt" and their coordinated efforts to reach a nominal settlement amount,

minimize Ms. Lyle's damages, and obstruct the full and fair adjudication of her claims; (6)

"attempt to enforce a void settlement"; (7) failure to properly identify Ms. Lyle in its credit

reporting of her; and (8) interference, through the actions of its attorney, with Ms. Lyle's ECF

account by hacking and accessing the account without authorization, as demonstrated by

opposing counsel sending Ms. Lyle "personal AI communications[.]"  DI 28 at 1; DI 29 at 2-3;

DI 33 at 2-4; DI 36 at 2; DI 40 at 2-3.

    The aforementioned allegations against TransUnion do not state a claim for relief under

the FDCPA — which requires Ms. Lyle to prove that (1) she is a consumer; (2) TransUnion is a

debt collector; (3) TransUnion's challenged practice involved an attempt to collect a "debt" as

understood in the FDCPA; and (4) TransUnion violated an FDCPA provision in attempting to

collect that debt.  *Douglass*, 765 F.3d at 303 (citation modified).  On the present record, Ms. Lyle

does not provide facts that, if construed as true, would establish these elements.  For example,

Ms. Lyle has not plausibly alleged, nor can she, that TransUnion is a debt collector.  *TransUnion*

*LLC v. Ramirez*, 594 U.S. 413, 419 (2021) (describing TransUnion as "one of the 'Big Three'

credit reporting agencies" which creates and sells consumer reports regarding an individual's

creditworthiness); *Burry v. Cach LLC*,  2015 WL 328182, at *1 (E.D. Pa. Jan. 22, 2015)

(explaining that TransUnion constitutes "a corporation that provides credit reports to consumers"

21

rather than a debt collector).  Nor has she demonstrated that TransUnion violated the FDCPA in its attempt to collect a debt, as understood in the FDCPA.  Rather than relating to an FDCPA violation, Ms. Lyle's allegations against TransUnion regarding its post-settlement-execution conduct revolve around TransUnion's alleged fraud, misrepresentation, and collusion with Ms. Lyle's former counsel in an effort to obtain her non-consensual settlement agreement.

But these allegations are not enough to state a claim for relief for fraud or misrepresentation, either.  Ms. Lyle avers that, through its collusion with her former attorneys, TransUnion has made misrepresentations to, and defrauded, both her and this court.  DI 41 at 3-4.  To survive dismissal on her fraud or intentional misrepresentation claim respecting herself, she must plead sufficient facts that, if taken as true, would prove (1) TransUnion made a representation; (2) that was (a) material to the settlement agreement, (b) made falsely, either with the knowledge of its falsity or recklessness regarding its veracity, and (c) made with the intent to mislead her or another into relying upon the representation; and (3) she justifiably relied upon that misrepresentation, resulting in her injury.  *SodexoMAGIC*, 24 F.4th at 205 (citation modified); *Gibbs*, 647 A.2d at 889.  Regarding her negligent misrepresentation claim, she must plead the same elements with the exception of the second one: instead, she must establish that TransUnion made a misrepresentation material to the settlement agreement that it either knew was false, should have known was false, or made without knowledge of its veracity.  *Gibbs*, 647 A.2d at 890.

For her claim that TransUnion defrauded or made intentional misrepresentations to this court, Ms. Lyle must plead sufficient facts that, if construed as true, would prove (1) TransUnion made a representation; (2) that was (a) material to the court's acceptance of the settlement

agreement and dismissal of this case, (b) made falsely, either with the knowledge of its falsity or recklessness regarding its veracity, and (c) made with the intent to mislead this court into relying upon the representation; and (3) this court justifiably relied upon that misrepresentation, resulting in injury. *SodexoMAGIC*, 24 F.4th at 205 (citation modified); *Gibbs*, 647 A.2d at 889. Again, regarding her negligent misrepresentation claim, she must plead the same elements with the exception of the second element: instead, she must establish that TransUnion made a misrepresentation material to this court's acceptance of the settlement agreement and dismissal of this case that it either knew was false, should have known was false, or made without knowledge of its veracity. *Gibbs*, 647 A.2d at 890.

On the record before us, we must conclude that Ms. Lyle has not sufficiently pled that TransUnion either defrauded or made misrepresentations to her or this court. First, it is unclear to us what, if any, representation or representations TransUnion made to Ms. Lyle respecting the Settlement Agreement. Ms. Lyle does not allege any specific statements made to her, by TransUnion, related to the signing or execution of the agreement. Instead, she essentially provides a conclusory recitation of the elements of fraud and misrepresentation, asserting that TransUnion engaged in "fraud" and "intentional misrepresentation" by colluding with her former counsel to reach the agreement. DI 41 at 3. Without knowing what was allegedly said to her, we are constrained to conclude that the facts, as pled, do not establish that (1) any such representations were material to the Settlement Agreement; (2) TransUnion made false representations with the requisite knowledge, recklessness, or negligence; or (3) Ms. Lyle justifiably relied upon these representations and suffered an injury caused by that reliance.

Nor has Ms. Lyle pled sufficient facts to establish that TransUnion defrauded or made

misrepresentations to this court.  Ms. Lyle's alleged facts regarding representations to this court

involve TransUnion's (1) submission of the Settlement Agreement to us; (2) filing of a

stipulation of dismissal with prejudice to us; (3) failure to disclose that No. 24-cv-1831 was

reopened on April 1, 2025; (4) false statements regarding her employment termination; and (5)

accessing of her ECF account.  DI 28 at 1; DI 29 at 2-3; DI 33 at 2-4; DI 36 at 2; DI 40 at 2-3.

Even assuming, *arguendo*, that these representations were material to our decision to accept the

Settlement Agreement and dismiss this case with prejudice, Ms. Lyle has not plausibly shown

that these representations were false, that we relied upon these representations, or that our

reliance upon these representations resulted in an injury.  To the contrary, after Ms. Lyle alerted

us that she did not understand her case to be dismissed, remember signing the settlement

agreement, or believe the agreement was fair, we held a case management conference.  No. 24-

cv-1831, ECF 28.  During that conference, we reviewed the Settlement Agreement *in camera*

and heard from Ms. Lyle, her now-former counsel, and defense counsel.  Following this, we

concluded that the Settlement Agreement appeared to be in order and signed by Ms. Lyle,

because the record before us indicated that Ms. Lyle chose to settle that matter.  No. 24-cv-1831,

ECF 29.  Inherent in that assessment was our conclusion that neither TransUnion, nor Ms. Lyle's

former counsel, made any misrepresentations respecting the Settlement Agreement to Ms. Lyle

or us.  Moreover, our decision to accept the Settlement Agreement, close the case, and keep the

case closed, was based on our independent assessment of the agreement, the statements of Ms.

Lyle, her former counsel, and defense counsel, and the entirety of the record.  As explained

above, nothing in the record, as presented by Ms. Lyle, changes our assessment.  Nor has Ms.

Lyle sufficiently pled that defense counsel gained unauthorized access to her ECF account, as

she provides no specific allegations regarding what defense counsel has done to demonstrate such access other than her vague assertion that counsel sent her "personal AI communications[.]" DI 40 at 2-3.  Because she has not explained what those alleged communications are, we cannot assess whether those communications indicate unauthorized access of her ECF account.  Finally, TransUnion's discussion of No. 24-cv-1831 as closed does not in any way affect our decision today — our decision is based upon our assessment of the law as applied to the record before us, and we are well aware that we provided Ms. Lyle the opportunity to challenge the Settlement Agreement achieved in No. 24-cv-1831 *pro se* through a Rule 60(b) motion.  Fed. R. Civ. Pro. 60(b).

**C.  Ms. Lyle's motions to vacate the dismissal under No. 24-cv-1831 and consolidate Nos. 24-cv-1831 and 25-cv-2647 are denied**

We also deny Ms. Lyle's motions for *vacatur* and consolidation.  The dismissal in No. 24-cv-1831 was based on the valid Settlement Agreement, and we see no reason to disturb it.  Accordingly, we deny Ms. Lyle's motion for *vacatur*.  As for consolidation, Ms. Lyle has not shown that consolidation is appropriate.  Given our conclusion that her claims against TransUnion must be dismissed, consolidation of No. 24-cv-1831 (in which TransUnion was a party) and No. 25-cv-2647 (in which TransUnion is no longer a party) would unduly prejudice TransUnion.  Consolidation also would create further inconvenience and inefficiencies, as Ms. Lyle's only remaining claims regard not the substance of TransUnion's allegedly erroneous credit reporting, but rather her former counsel's alleged misconduct and ineffectiveness.  And these claims against her former counsel in the present action are sufficiently distinct from those asserted in the prior action.  Thus, consolidation is not warranted.

**VI.    CONCLUSION**

The claims against TransUnion barred by *res judicata* are dismissed with prejudice. The other claims, which were insufficiently pled under Rule 12(b)(6), are dismissed without prejudice. Moreover, there is no reason to disturb the dismissal of Ms. Lyle's prior action against TransUnion in No. 24-cv-1831, so we deny her motion for *vacatur*. Finally, we deny Ms. Lyle's motion to consolidate Nos. 24-cv-1831 and 25-cv-2647 because such consolidation is not appropriate. In an accompanying order, we will provide Ms. Lyle with a deadline for filing a fourth amended complaint if she can address the pleading deficiencies outlined above.