**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RHONDA LYLE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  25-2647** |
| | : | |
| **TRANS UNION** | : | |

**<u>MEMORANDUM</u>**

**MURPHY, J.**                                                                                            **May 26, 2026**

Rhonda Lyle comes before us with her fourth amended complaint against TransUnion, a credit reporting agency (CRA).  Compared to her prior complaint, which we dismissed on claim preclusion and Fed. R. Civ. P. 12(b)(6) grounds (DI 49, 50), Ms. Lyle has whittled things down. She now focuses on allegations that TransUnion has continued to violate the Fair Credit Reporting Act (FCRA) after settling their earlier dispute.  Ms. Lyle's restated complaint against TransUnion is more focused, but it does not state a claim upon which relief may be granted under Rule 12(b)(6).  Therefore, we grant TransUnion's motion to dismiss without prejudice.

**I.       FACTUAL BACKGROUND**

Our prior memorandum (DI 49) describes the factual background of this case in detail, so we will not repeat it here.  Ms. Lyle reached a settlement agreement with TransUnion on January 7, 2025, which addressed Ms. Lyle's claims that TransUnion violated the FCRA by failing to: (1) follow reasonable procedures to assure maximum possible accuracy, in violation of 15 U.S.C. § 1681e(b); (2) perform reasonable reinvestigation, in violation of 15 U.S.C. § 1681i; and (3) provide her with her TransUnion credit file, in violation of 15 U.S.C. § 1681g.  No. 24-cv-1831, ECF 1 at ¶¶ 193-216.  We closed this case pursuant to the parties' joint filing of a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii) and — following a conference with the parties — determined that the case should remain closed because the

record indicated that Ms. Lyle settled the matter.  No. 24-cv-1831, ECF 22, ECF 29 at 1.

Ms. Lyle then filed a new complaint against TransUnion on May 22, 2025, creating this second case.  DI 1.  TransUnion moved to dismiss the matter (DI 9), precipitating numerous additional filings from the parties (including several styled as an "Amended Complaint").  On January 8, 2026, we granted TransUnion's motion to dismiss (1) with prejudice as to Ms. Lyle's FCRA claims regarding TransUnion's alleged conduct prior to the execution of the January 7, 2025 settlement agreement in No. 24-cv-1831; and (2) without prejudice to raising any (a) FCRA claim regarding TransUnion's alleged conduct after the settlement agreement's execution, (b) Fair Debt Collection Practices Act (FDCPA) claim against TransUnion, and (c) common law fraud and misrepresentation claims against TransUnion.  DI 50 at 1.  We granted Ms. Lyle leave to file a fourth amended complaint addressing the claims dismissed without prejudice, providing that she could plead sufficient facts to overcome the deficiencies described in our accompanying memorandum.  *Id.* at 1-2; DI 49 at 16-25.

## II.    OPERATIVE AMENDED COMPLAINT

Ms. Lyle took the opportunity to file a fourth amended complaint.  DI 51.  In it, she asserts one cause of action against TransUnion: violations of the FCRA under 15 U.S.C. §§ 1681e(b), 1681i, 1681n, and 1681o.  DI 51 at 5-7.  She avers that, following the settlement agreement and dismissal of No. 24-cv-1831, "TransUnion continued to maintain and furnish a consumer report and credit file on [her]."  *Id.* at ¶ 38.  She contends that "TransUnion failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning [her,]" in violation of § 1681e(b), despite telling her on August 26, 2025, that "the issue with [her] credit file was fixed on 4/28/2023."  *Id.* at ¶¶ 39, 43; DI 52 at 10.  In support of

her claim that TransUnion "continued to report, maintain, or allow the use of inaccurate, incomplete, or unreliable information concerning [her]" and "failed to conduct reasonable reinvestigations and corrections" in response to her complaints, Ms. Lyle points to a (1) September 9, 2024 notice from Synchrony Bank stating that it required additional information to verify her identity in part due to information provided by TransUnion; and (2) a January 16, 2026 application for a Discover credit card that was denied because the creditor couldn't reliably identify her.  DI 51 at ¶¶ 40-44.  She also highlights a September 9, 2025 "Notice of Data Incident" that TransUnion sent her, notifying her of a cyber incident involving a third-party application which compromised her Social Security number and date of birth: according to Ms. Lyle, in combination with TransUnion's history of mismatching and misreporting her file, this breach "demonstrates that TransUnion failed to maintain and implement reasonable procedures and safeguards designed to assure maximum possible accuracy and to prevent foreseeable misuse and mis[]association of [her] information after January 2025."  DI 51 at ¶¶ 45-46.  Ms. Lyle avers that TransUnion knew or should have known that its continued "identity-matching and file management" issues "would likely cause [her] further denials of credit, inability to obtain mainstream financial products, and heightened risk of identity theft[,]" yet it failed to take reasonable steps to prevent and correct such issues.  *Id.* at ¶ 47.  She thus asserts that she has suffered various damages due to TransUnion's negligent and/or willful violations of sections 1681e(b) and 1681i.[1]  *Id.* at ¶ 48.  Ms. Lyle also makes several assertions regarding alleged

---

[1] Ms. Lyle contends that TransUnion's assertion that her credit file issues were "fixed" as of April 2023, when she continued to experience credit denials and suffered a data breach from her TransUnion information, indicates TransUnion's "willful disregard of [her] rights" or, alternatively, its negligence under § 1681o.  DI 51 at ¶¶ 49-50.  And, in her view, the pre-

conduct that (1) predated the January 2025 settlement agreement;[2] or (2) involved counsel for

TransUnion obtaining Ms. Lyle's legal documents and research without authorization.[3]

## III.    MOTIONS AT ISSUE

### A.    TransUnion's motion to strike

TransUnion moves to strike portions of Ms. Lyle's fourth amended complaint.  DI 56.  It

argues that the majority of her complaint contains (1) incorrect and damaging assertions

regarding the case and opposing counsel; (2) confidential information from the settlement

agreement; and (3) unsupported allegations regarding issues that we have clearly addressed and

decided.  DI 56-1 at 7.  TransUnion asserts that striking these redundant, immaterial, scandalous,

and prejudicial portions of the complaint will serve the purposes of Fed. R. Civ. P. 12(f) by

streamlining the issues and thus saving all involved valuable time and expense.  *Id.*  It insists that

Ms. Lyle's allegations respecting improper ECF access, counsel's misconduct, the prior

settlement, her request for more compensation, and a pattern of bad faith and collusion have no

relation to nor bearing upon her FCRA claim.  DI 60 at 4.  TransUnion specifically asks us to

---

settlement and post-settlement conduct illustrates "a continuing pattern of collusion, bad faith, and misconduct by TransUnion and its counsel."  *Id.* at ¶ 33.

[2] *See, e.g.*, DI 51 at ¶¶ 7-14, 19-20, 33-34, 40.

[3] *See, e.g.*, DI 51 at ¶¶ 6, 28-32 (asserting that opposing counsel's alleged interference with her ability to make legal filings and the privacy of her legal research demonstrates "harassment, abuse of the litigation process, [ ] an effort to obstruct justice[,]" and "a pattern of bad-faith litigation conduct designed to intimidate [her], obstruct her ability to prosecute this case as a pro se litigant, and reinforce the earlier collusive effort to cut off her claims through an unauthorized low-value settlement and dismissal with prejudice.").

strike paragraphs 6,[4] 11 and 13,[5] 16,[6] 28-32,[7] and 33-35.[8]  DI 56 at 7-12.

Ms. Lyle opposes TransUnion's motion to strike.  DI 58; DI 61-1; DI 61-2; DI 62; DI 62-

---

[4] Paragraph 6 alleges that TransUnion's counsel obtained legal documents and research from Ms. Lyle without authorization.  DI 51 at ¶ 6.  TransUnion asserts this should be stricken because (1) its counsel is not a party to this action; (2) we previously addressed this issue in our January 8, 2026 memorandum; and (3) such allegations would not impact the outcome of her FCRA claim but would prejudice TransUnion.  DI 56-1 at 7-8.

[5] Paragraphs 11 and 13 allege conduct related to the formation and execution of the January 2025 settlement agreement.  DI 51 at ¶¶ 11, 13.  TransUnion asks to strike these paragraphs because (1) we already concluded that the settlement agreement was properly executed in our January 8, 2026 memorandum; and (2) such allegations disclose confidential settlement information, which severely prejudices TransUnion.  DI 56-1 at 8-9.

[6] Paragraph 16 recounts TransUnion's August 26, 2025 letter to Ms. Lyle, in which it asserted that it was unable to provide her with more monetary compensation regarding her credit file because her "file was fixed on 4/28/2023."  DI 51 at ¶ 16.  TransUnion argues that this should be stricken because Ms. Lyle's request for further monetary compensation is immaterial to her FCRA claims.  DI 56-1 at 9.

[7] Paragraphs 28-32 allege interference by TransUnion's counsel with her ability to file legal documents in this matter, as well as with her private legal research.  DI 51 at ¶¶ 28-32.  TransUnion urges us to strike these paragraphs because (1) the record shows that TransUnion's counsel did not mail Ms. Lyle her "confidential legal research conversation[,]" as such information was linked in Ms. Lyle's own filing on this matter's docket; and (2) these allegations, as well as her allegations that TransUnion's counsel interfered with her ECF access, are "scandalous and impertinent" and prejudicial to TransUnion.  DI 56-1 at 9-10.

[8] Paragraphs 33-35 allege pre-and-post-settlement conduct that Ms. Lyle asserts constitutes a "[]pattern of [c]ollusion and [bad] [f]aith[.]"  DI 51 at ¶¶ 33-35.  TransUnion asks us to strike these assertions because (1) we already addressed the pre-settlement agreement issues in our January 8, 2026 memorandum; (2) we addressed her allegations regarding TransUnion's counsel's access and use of Ms. Lyle's legal communications in our prior memorandum, and she has not presented additional evidence to rebut our conclusions therein; (3) her allegations that TransUnion and its attorneys coordinated to minimize her recovery, cut off her jury-trial rights, and prevent her from obtaining full remedies constitute "scandalous and false accusations [that] cause severe prejudice to TransUnion and are directly rebutted by" our order permitting her to amend her complaint; and (4) her claims of TransUnion's bad faith conduct are "unsupported by facts, [ ] prejudicial to TransUnion[,] and have no relevance to the controversy."  DI 56-1 at 11-12.

1; DI 62-2; DI 62-3; DI 62-4; DI 62-5; DI 62-6; DI 62-7; DI 64.  Ms. Lyle asserts that the use of Rule 12(f) is both disfavored and narrow, and that Rule 12(f) motions are not intended to resolve factual disputes regarding the truth of allegations.  DI 58 at 1.  She insists that the challenged paragraphs in her fourth amended complaint "are not redundant, immaterial, impertinent, or scandalous" for Rule 12(f) purposes, and that TransUnion has failed to demonstrate that any of the challenged allegations lack any "possible relation to the controversy[,]" will confuse the issues, or will prejudice TransUnion.  *Id.* (citation modified).  In her view, the challenged paragraphs "provide factual context, explain [her] damages, and describe conduct occurring in connection with this case[,]" so they should remain in her complaint.  *Id.*  She argues that her allegations regarding opposing counsel's conduct in paragraph 6 of the operative complaint "relate[] to [her] ability to litigate her FCRA claims, her trust in the process, and her emotional-distress damages[,]" "explain[] why [she] raised concerns about interference with her filings and communications[,]" and occurred after the settlement.  *Id.* at 2.  Paragraphs 11 and 13, she insists, concern "necessary background explaining why [she] continued to challenge [TransUnion]'s reporting and why she pursued a new FCRA action after the dismissal" and explain her "state of mind, reliance, [] damages, [and] [] loss of confidence in [TransUnion] and in the legal process."  *Id.*  Ms. Lyle also offers to redact the numerical amount of the settlement, rather than strike these paragraphs in their entirety, if we deem the disclosure of this information improper.  *Id.*  As for paragraph 16, Ms. Lyle avers that TransUnion's August 26, 2025 response indicating that her file was fixed in 2023 "shows [TransUnion]'s position on the status of [her] credit file after the settlement and that [she] notified [TransUnion] of continuing problems which [TransUnion] refused to remedy[,]" such that these allegations are directly relevant to her claims

6

for damages related to TransUnion's failure to utilize reasonable procedures, conduct reasonable reinvestigations, and willfulness. *Id.* Ms. Lyle contends that her allegations in paragraphs 28-32 are relevant because "they explain irregularities and delays on the docket during this case, support [her] claim that her ability to vindicate her FCRA rights was hindered, and describe additional emotional distress and mistrust caused by the alleged conduct." *Id.* She further avers that paragraphs 33-35 go to her "theory that [TransUnion] and its counsel repeatedly acted to minimize her recovery and obstruct her efforts to obtain full FCRA remedies" resulting in a "pattern [that] is relevant to willfulness and punitive damages under the FCRA and to the credibility of [TransUnion]'s assertion that it corrected the errors and complied with its duties."[9] *Id.* at 3. To the extent that we find any specific paragraph to be "overly detailed or inappropriate," Ms. Lyle suggests "targeted editing or redaction" rather "than striking broad swaths of her complaint that help explain her theory of harm." DI 62-7 at 1; DI 64 at 3.

**B.      TransUnion's motion to dismiss**

TransUnion once more seeks dismissal of Ms. Lyle's claims, this time with prejudice. DI 57. It argues that dismissal is warranted because Ms. Lyle's fourth amended complaint (1) utilizes pre-settlement conduct in support of her post-settlement FCRA claims; (2) fails to plead sufficient facts for a post-settlement FCRA claim; (3) contains claims regarding the handling of her personal information and a data breach, which do not establish an FCRA claim; and (4) makes unfounded allegations of collusion in reaching the settlement agreement between her former counsel and TransUnion, which we already addressed, as well as continued baseless

---

[9] In Ms. Lyle's view, our prior determination that the settlement agreement was enforceable does not preclude her "from alleging how she experienced that process or from alleging subsequent bad-faith conduct that occurred after the settlement date." *Id.*

allegations regarding the conduct of TransUnion's counsel.  DI 57-1 at 6-8, 10-17.  TransUnion

emphasizes that Ms. Lyle's recitations of the basic elements of her FCRA claims do not save her

case from dismissal.  DI 60 at 2.  It also contends that Ms. Lyle lacks Article III standing because

she has not established that she suffered a concrete injury, noting the lack of allegations that "any

adverse credit decisions were substantially based on the alleged inaccurate information" or that

she experienced credit denials or less favorable treatment due to TransUnion's allegedly

inaccurate reporting.  DI 57-1 at 16-17.  And it insists that Ms. Lyle has not pled sufficient facts

to demonstrate her entitlement to damages.  *Id.* at 17.  TransUnion urges us to dismiss this case

with prejudice, asserting that Ms. Lyle (1) pleads "plainly improper" allegations against

TransUnion that are unrelated to her FCRA claim; (2) could not feasibly "manipulate the facts to

state a claim under the FCRA or any other law"; and (3) lacks standing for any FCRA claim.  *Id.*

at 11, 18.  Finally, it requests an award for the fees and costs incurred in this case.  *Id.* at 18-19.

  Ms. Lyle opposes TransUnion's motion to dismiss.  DI 58; DI 61-1; DI 61-2; DI 62; DI

62-1; DI 62-2; DI 62-3; DI 62-4; DI 62-5; DI 62-6; DI 64.  She insists that her fourth amended

complaint asserts FCRA claims "based solely on TransUnion's post-settlement conduct and uses

the prior case as background."  DI 58 at 1.  Ms. Lyle argues that her allegations, accepted as true,

state a plausible claim for FCRA relief — pointing to her allegations that, after the settlement

agreement, TransUnion (1) continued reporting inaccurate information regarding Ms. Lyle, (2)

failed to conduct reasonable reinvestigations after receiving notice of such issues, and (3) failed

to correct these errors, resulting in emotional distress and ongoing credit harm to Ms. Lyle.  *Id.*

She asserts that, following the January 2025 settlement, TransUnion reported that it could not

identify her, and that this prevented her "from having an accurate credit report in [her] own

name." DI 61-1 at 1. But she acknowledges that she "did not send [TransUnion] a new written dispute about this after the settlement, in part because [she] had already been through years of disputes and litigation about them marking [her] as deceased and then promising that [her] file was fixed." *Id.*; DI 62-4 at 1. However, she asserts that, though "she may not have labeled this as 'inaccuracy' using legal terms, [ ] the substance is that [TransUnion]'s reporting about her identity and file status remained wrong after it represented that her report had been corrected." DI 62-3 at 1. She also notes that she sought to correct her allegations regarding the denial for the Discover card "by asking [us] to remove that particular allegation while maintaining her other post-settlement FCRA claims[,]" DI 62-1 at 1, but she maintains that "[t]he inability of [TransUnion] to 'identify' [her] for purposes of providing a proper credit report is itself a continued manifestation of the same underlying problem that led to the prior litigation and settlement[,]" DI 62-3 at 1, DI 62-4 at 1. This, she maintains, has resulted in her continued inability to obtain and utilize correct credit information, anxiety and distress, and obstacles in seeking credit and housing. DI 62-6 at 1; DI 64 at 3. Ms. Lyle asks that, to the extent that we conclude that further factual detail is needed respecting TransUnion's post-settlement communications and duties, we permit her the opportunity to clarify such facts rather than dismiss her claims with prejudice. DI 62-4 at 1.

## IV.    LEGAL STANDARDS

### A.    Motions to strike

Rule 12(f) permits us to strike from a pleading any insufficient defenses or "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). As courts in our district have recognized, "motions to strike generally are disfavored." *DeLa Cruz v. Piccari Press*, 521

F. Supp. 2d 424, 428 (E.D. Pa. 2007) (citation omitted).  The movant must show that the allegations to be stricken "have no possible relation to the controversy and may cause prejudice to one of the parties" or would "confuse the issues."  *Id.* at 428-29 (citations omitted).  We decide motions to strike solely on the basis of the pleadings, utilizing the "drastic remedy" of striking a pleading "sparingly" and "only when required for the purposes of justice."  *Id.* at 428-29 (citations omitted).  Our disposition of motions to strike under Rule 12(f) rests within our "considerable discretion."  *Id.* at 428 (citation omitted).

**B.      Rule 12(b)(6) challenges**

A party may seek dismissal of an action against it by asserting that the complaint failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Upon reviewing a Rule 12(b)(6) motion, we shall only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (citation omitted).  We also must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant."  *Id.* (citation omitted).  Though conclusory allegations do not receive the same presumption of truth, "outlandish allegations" will receive this presumption provided that they do not resemble a "formulaic recitation of the elements of a [claim] or other legal conclusion."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (citation modified); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified) (citations omitted).  "[T]he clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point."  *Connelly*, 809 F.3d at

790 (citation omitted).  But some allegations that do not state ultimate legal conclusions may be "nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual[.]"  *Id.* (citation omitted).

To survive dismissal, a plaintiff's complaint must also state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679.  Whether the complaint achieves this plausibility standard is a context-specific question; to answer it, we must utilize our common sense and judicial experience.  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not show[n] — that the pleader is entitled to relief."  *Id*. (citation modified) (citation omitted).

Finally, we must construe complaints filed by *pro se* litigants liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citations omitted).  Even still, to survive dismissal, *pro se* litigants must plead sufficient facts supporting their claims.  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).  As we have done throughout the course of this case, we have endeavored to give Ms. Lyle every chance to fully state her claims and arguments in response to those raised by TransUnion.

## C.    FCRA claims

The Fair Credit Reporting Act seeks "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner."  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (citation omitted).  Sections 1681n and 1681o enable an individual to bring a private suit for damages against a CRA who willfully or

negligently fails to comply with specific duties it owes to consumers under the FCRA.  15 U.S.C.

§§ 1681n, 1681o; *Seamans v. Temple Univ.*, 744 F.3d 853, 859-60 (3d Cir. 2014).  When

preparing a consumer report, § 1681e(b) of the FCRA requires a CRA to "follow reasonable

procedures to assure maximum possible accuracy of the information concerning the individual

about whom the report relates."  15 U.S.C. § 1681e(b); *Bibbs v. Trans Union LLC*, 43 F.4th 331,

342 (3d Cir. 2022).  To establish a *prima facie* § 1681e(b) claim, the plaintiff must demonstrate

that the "CRA prepared a report containing inaccurate information[.]"  *Bibbs*, 43 F.4th at 342-43

(citation modified) (citation omitted).  "[T]echnically correct" information may still be

inaccurate if, by omission, it creates "a materially misleading impression."  *Id.* at 343 (citation

modified).

Under 15 U.S.C. § 1681i,[10] CRAs promptly must reinvestigate any information in a

consumer's file disputed by the consumer and either (1) record the current status of the disputed

information, or (2) delete that information.  *Cortez*, 617 F.3d at 712 (citation omitted).  In *Cortez*,

the Third Circuit explained that the plaintiff had to establish that TransUnion had a duty to

reinvestigate a dispute pursuant to § 1681i and that, if it had conducted a reasonable

---

[10] 15 U.S.C. § 1681i(a)(1)(A) provides:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

*Id.*

12

investigation, it would have discovered a discrepancy. *Id.* at 712-13. "[A] reasonable reinvestigation must mean more than simply including public documents in a consumer report or making only a cursory investigation into the reliability of information that is reported to potential creditors." *Id.* at 713 (citation omitted). But to trigger this duty to reinvestigate, the consumer first must inform the CRA that she disputes the information. *Id.* at 714 (citing 15 U.S.C. § 1681i(a)(1)). And after conducting the reinvestigation, the CRA promptly must notify the consumer, in writing, of the reinvestigation's results. *Id.* at 714 (citing 15 U.S.C. § 1681(a)(6)). If the reinvestigation did not resolve her complaint, she must then file a statement of dispute with the CRA under § 1681i(b). *Id.* at 714-15 (citations omitted). Under § 1681i(a)(5)(C), CRAs must maintain procedures to prevent information which has been deleted due to its inaccuracy or misleading nature from reappearing. *Id.* at 713 (citing 15 U.S.C. § 1681i(a)(5)(C)).

A CRA may be liable for negligent noncompliance with the FCRA if "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Bibbs*, 43 F.4th at 342 (citation omitted). Conversely, a CRA willfully violates the FCRA if the CRA knowingly violates the FCRA or acts with reckless disregard of its FCRA obligations respecting the consumer. *Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012) (citation modified). The CRA acts with reckless disregard if its action (1) is a violation of the FCRA pursuant to a reasonable reading of the statute; and (2) shows that the CRA "ran a risk of violating the law [that was] substantially greater than the risk associated with a reading that was merely careless." *Id.* at 248-49 (citation modified) (citation omitted). To be

reckless, the CRA's actions must be objectively unreasonable when viewed against the clearly established legal rules at the time of its conduct.  *Id.* at 249 (citation omitted).

## IV.    DISCUSSION

### A.    We dismiss without prejudice Ms. Lyle's FCRA claims against TransUnion because they are insufficiently pled under Rule 12(b)(6)

Ms. Lyle has not pled facts sufficient to state a claim for relief under the FCRA.  To state a claim under 15 U.S.C. § 1681e(b), Ms. Lyle must demonstrate that TransUnion "prepared a report containing inaccurate information[.]" *Bibbs*, 43 F.4th at 342-43 (citation modified) (citation omitted); *see* 15 U.S.C. § 1681e(b).  Sections 1681n and 1681o pertain to a CRA's willful or negligent failure to comply with specific duties owed to consumers under the FCRA. 15 U.S.C. §§ 1681n, 1681o; *Seamans*, 744 F.3d at 859-60.  To prevail under these sections, Ms. Lyle must establish either that TransUnion (1) failed to follow reasonable procedures to ensure the maximum possible accuracy of its reported information, resulting in inaccurate information about her; or (2) knowingly violated the FCRA or otherwise acted with reckless disregard of its FCRA obligations toward her.  *Bibbs*, 43 F.4th at 342, 342 n.16; *Fuges*, 707 F.3d at 248.

Here, Ms. Lyle does not plead sufficient facts to demonstrate that TransUnion "prepared a report containing inaccurate information." *Bibbs*, 43 F.4th at 342-43 (citation modified) (citation omitted).  Taken together, Ms. Lyle's allegations regarding these claims consist of the following: (1) TransUnion maintained and furnished a consumer report and credit file on her after the settlement agreement; (2) TransUnion continued to report, allow the use of, or maintain unreliable or inaccurate information regarding her; and (3) TransUnion could not identify her as a consumer after the settlement agreement, resulting in her inability to have a usable credit file. DI 51 at ¶¶ 38, 40-44; DI 62-3.  Her support for these allegations includes (1) a September 9,

2024 notice from Synchrony Bank (which predates the settlement agreement); (2) a January 16, 2026 application for a Discover credit card that was denied due to the creditor's inability to reliably identify her (which does not name TransUnion, is not attached to the complaint, and is abandoned in Ms. Lyle's subsequent filings, *see* DI 62-1 at 1); and (3) a September 9, 2025 notice of a data breach involving a third-party application. *Id.* at ¶¶ 40-46. Ms. Lyle has not pled any specific information respecting how TransUnion purportedly violated, or continues to violate, the FCRA following the settlement's execution. She does not state what the alleged inaccuracies in her TransUnion credit report are, the reason given for its purported inability to identify her, nor when such issues occurred. She does not point to any specific post-settlement credit report from TransUnion after the settlement. She does not provide any specific examples of credit denials or other negative consequences tied to alleged misreporting from TransUnion — there is no information regarding what entities denied her credit or other related applications, when they did so, or for what reasons. And her exhibits do not indicate that TransUnion committed post-settlement FCRA violations. We thus conclude that Ms. Lyle has not provided sufficient facts to establish that TransUnion "prepared a report containing inaccurate information" or that it negligently or willfully violated the FCRA after the settlement agreement's execution. These claims are dismissed without prejudice.

Ms. Lyle also does not state a claim for relief under § 1681i. To prevail on a § 1681i(a)(1) claim, Ms. Lyle must establish that (1) she informed TransUnion that she disputed information in her credit report; (2) TransUnion had a duty to reinvestigate the dispute; and (3) TransUnion would have discovered a discrepancy if it had conducted a reasonable investigation. *Cortez*, 617 F.3d at 712-714; *see* 15 U.S.C. § 1681i(a)(1). Ms. Lyle concedes that she "did not

15

send [TransUnion] a new written dispute about this after the settlement, in part because [she] had already been through years of disputes and litigation about them marking [her] as deceased and then promising that [her] file was fixed." DI 61-1 at 1; DI 62-4 at 1. And there is no allegation that she otherwise informed TransUnion that she disputed specific information in her credit report. Again, she does not point to any specific inaccuracy in her credit report at all. We thus must conclude that Ms. Lyle has not sufficiently pled a claim under § 1681i(a)(1) because she has not established that TransUnion had a duty to reinvestigate a dispute and that, upon conducting a reasonable investigation, it would have discovered a discrepancy in her credit report. *Cortez*, 617 F.3d at 712-13. This lack of specificity — regarding, for example, any incorrect or misleading information in her credit report or file, or TransUnion's procedures (or lack thereof) for ensuring accurate information — also requires dismissal of her claim that TransUnion has failed to maintain procedures to prevent the re-emergence of previously deleted inaccurate or misleading information in her file. *Id.* at 713; *see* 15 U.S.C. § 1681i(a)(5)(C). And Ms. Lyle's recitation of the elements of the FCRA do not save her complaint from dismissal. *Connelly*, 809 F.3d at 789. Ms. Lyle's claims under § 1681i are dismissed with prejudice.

**B.    We deny as moot TransUnion's motion to strike**

Because we grant TransUnion's motion to dismiss in full, we need not address TransUnion's motion to strike (DI 56). TransUnion's motion to strike is dismissed as moot.[11]

---

[11] Though we do not address TransUnion's motion to strike in this memorandum, we caution Ms. Lyle against including allegations that we have already deemed irrelevant in any subsequent filings — such as those regarding ECF interference and access to her legal research by TransUnion's counsel, as well as the pre-settlement conduct of her attorneys and TransUnion — in any subsequent filings. As we previously determined, Ms. Lyle's pre-settlement FCRA claims against TransUnion are barred by claim preclusion, so she may not re-raise them here.

16

However, in our accompanying order and consistent with our prior order striking Ms. Lyle's attachment of the confidential settlement agreement between her and TransUnion (DI 27), we will strike from the record any reference to the settlement amount in the agreement.

## V.   CONCLUSION

Ms. Lyle's FCRA claims are insufficiently pled under Rule 12(b)(6), as she has not demonstrated that TransUnion (1) prepared a report which contained inaccurate information; (2) willfully or negligently failed to comply with specific duties owed to consumers under the FCRA; or (3) failed to comply with any duty to reinvestigate a dispute, where such reinvestigation would have resulted in the discovery of a discrepancy in her report.  We therefore grant, without prejudice, TransUnion's motion to dismiss her fourth amended complaint.  We appreciate that Ms. Lyle has had several opportunities to state a claim, but we will leave the door open and dismiss without prejudice one final time.  TransUnion's motion to strike portions of Ms. Lyle's fourth amended complaint is denied as moot.  However, we will strike Ms. Lyle's reference in her fourth amended complaint to the settlement amount achieved in the January 2025 settlement.  An appropriate order accompanies this memorandum.

---

*See* DI 50 at 1.  Finally, respecting Ms. Lyle's allegation that TransUnion's counsel gained unauthorized access to her legal research conducted on Cetient Legal Research AI because counsel allegedly sent her a copy of that research, we note that this very research is accessible through Ms. Lyle's own filing (*see* DI 11) by clicking the hyperlink at the bottom of each page.  This allegation is thus not only immaterial to Ms. Lyle's FCRA claims, but it is also baseless.